IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PHYLLIS BURLESON ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:08cv679-CSC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Phyllis Burleson Adams ("Adams"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Adams then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The Appeals Council's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

case is now before the court for review pursuant to 42 U.S.C. § 405(g) and § 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to entry of final judgment by the United States Magistrate Judge.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. § 404.1520, §416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

---

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

Adams was 53 years old at the time of the hearing before the ALJ. (R. 286.) She went to high school through the twelfth grade and completed a year and a half of business school.[4] (R. 94, 287.) Adams' prior work experience includes working as an automobile taper in an auto body repair shop, a bindery operator, and a hand packer. (R. 55.) Adams alleges that she became disabled on June 6, 2006, due to a chronic lung condition, dental problems, depression, a leg infection, arthritis, and chronic weight loss. (R. 3G, 35, 286-88.) Following the administrative hearing, the ALJ concluded that Adams has impairments of chronic obstructive pulmonary emphysema, chronic obstructive lung disease, chronic smokers' bronchitis, and history of left foot infection which was treated and resolved. (R. 3M.) The ALJ determined that Adams is able to return to her prior work as a hand packer and binder operator. (R. 3Q.) Accordingly, the ALJ concluded that Adams is not disabled. (R. 3R.)

## IV. Discussion

Adams raises several issues and arguments related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987). However, the court pretermits discussion of Adams' specific arguments because the court concludes that the Commissioner erred as a matter of law, and thus, this case is due to be remanded for

---

[4] The medical records indicate that Adams "went to twelfth grade but quit" and thereafter attended business school. (R. 94.)

further proceedings. Specifically, the court finds that the Commissioner failed to consider Adams' inability to afford medical treatment and failed to properly consider the effects of her chronic weight loss, pancytopenia, dental problems, and other impairments on her ability to perform work.

The ALJ discredited Adams' testimony concerning her ability to perform work, specifically noting that Adams did not seek treatment for lung disease for over ten months in 2005 and received no treatment in 2007. (R. 3Q.) While failure to seek treatment is a legitimate basis to discredit the testimony of a claimant, it is the law in this circuit that poverty excuses non-compliance with prescribed medical treatment or the failure to seek treatment. *Dawkins v. Bowen*, 848 F.2d 1211 (11th Cir. 1988). During opening statements, Adams' counsel advised that Adams was no longer using an inhaler because "she can't afford to go to the doctor and can't afford the inhaler." (R. 286.) In addition, the medical records are replete with references to Adams' inability to afford medical treatment. For example, during a follow-up visit to a general practitioner at Millbrook Family Medicine on February 16, 2005, Adams stated that she did not purchase a prescribed antibiotic because it was too expensive. (R. 86.) During a consultative examination on December 13, 2005, Dr. Steven Hayden, a consultative physician, noted that Adams did not have health insurance. (R. 95.) Upon discharge from Baptist Health on May 16, 2007, Adams indicated that she was unable to afford Augmentin. (R. 171.) ) On appeal, Adams also informed the Appeals Council that her husband no longer has insurance and is suffering from cancer, that she cannot afford dentures, that she owes over $34,000 in medical expenses, and that she has "been getting

Advair for my breathing from my sister because we can't afford to buy it and [she] can't afford to go to the doctor and they won't treat [her] for free." (R. 3G.)  When discrediting Adams' testimony concerning her abilities and concluding that the lack of medical records establish that Adams has the residual functional capacity to return to her past relevant work, the Commissioner failed to consider whether Adams' financial condition prevented her from seeking medical treatment.  Thus, the court concludes that the ALJ erred as a matter of law in discrediting Adams' testimony based on her failure to seek medical treatment.

     In addition, when determining that Adams has the residual functional capacity to return to her past work, the ALJ failed to consider the effect that Adams' chronic weight loss has on her ability to perform work.  Although the ALJ accorded some weight to Dr. Hayden's opinion that Adams has reduced ability to stand, walk, and do moderate exercise, he failed to consider the consultative physician's notes, as well as other medical records, indicating that Adams suffers from chronic weight loss. On December 13, 2005, Dr. Hayden noted that Adams weighed 86 pounds, that her ideal body weight should be between 111 and 121 pounds, and that she was underweight by 25 pounds or 23% under her ideal weight.  (R. 93.)  Dr. Hayden also noted that Adams reported that she began losing weight one year earlier and went from 102 to 86 pounds. (R. 94.) The consultative physician determined that Adams "has muscle wasting of both thighs and has strength difficulty getting up from full squat" and that she "still eats well but cannot maintain weight."  (R. 95.)  The medical records are also replete with references to Adams' struggle with chronic weight loss.  On September 20, 1999, Dr. Spencer D. Coleman, a family practitioner, noted that Adams

6

weighed 83 pounds, assessed that she suffered from "weight loss, probably multi-factorial from not eating and COPD," and advised her to drink one can of Ensure twice a day and take vitamins. (R. 74-75.) On October 8, 1999, Dr. Coleman indicated that Adams had gained two pounds. (R. 73.) During a visit to Millbrook Family Medicine on December 17, 2002, Adams' weight had increased to 96 pounds. (R. 88.) However, during a subsequent visit on February 7, 2005, Adams' weight had dropped to 89 pounds. (R. 87.) One week later on February 16, 2005, Adams weighed 88 pounds. (R. 80, 86.) Additionally, during bronchodilator testing on January 23, 2006, Adams weighed 86 pounds. (R. 98.) During her hospitalization at Baptist Health in May 2007, Adams weighed 39 kilograms.[5] (R. 108.) Thus, the medical records demonstrate that, during the relevant time period, Adams has consistently weighed between 86 and 89 pounds. Because the ALJ did not discuss the effects of Adams' chronic weight loss and muscle wasting on her ability to perform work, this court is unable to determine whether the ALJ's decision is supported by substantial evidence.

The ALJ's error in failing to consider Adams' chronic weight loss is compounded by his reliance on the erroneous testimony of the medical expert, Dr. James N. Anderson. In his analysis, the ALJ found that Dr. Anderson's testimony was "true, accurate, and correct" and accepted Dr. Anderson's testimony that Adams would be limited to light work with lung restrictions. (R. 3P.) Dr. Anderson gave incorrect testimony concerning Adams' weight. During the hearing, Dr. Anderson testified that Dr. Hayden's notes indicate that Adams weighed 101 pounds in December 2005. (R. 291-92.) The medical records, however,

---

[5] Thirty-nine kilograms equals 85.9802 pounds.

indicate that Adams weighed 86 pounds in December 2005. (R. 93.)   In addition, the medical expert failed to discuss Dr. Hayden's findings that Adams had "bird legs," appeared to suffer from "muscle wasting," and was 23% below her ideal weight.  The court therefore concludes that Dr. Anderson's opinion with respect to Adams' chronic weight loss is not supported by the evidence and thus the ALJ's reliance on that opinion cannot be supported by substantial evidence.[6]

Moreover, the ALJ must consider every impairment alleged by the plaintiff and determine whether the alleged impairments are sufficiently severe – either singularly or in combination – to create a disability.  *See Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).  All of the plaintiff's impairments must be considered in combination, even when the impairments considered separately are not severe.  *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985).  In his analysis, the ALJ failed to discuss the effects of Adams' pancytopenia and dental problems on her ability to work.  The medical records demonstrate that, during Adams' hospitalization at Baptist South in May 2007, the attending physician requested that physicians from the UAB Montgomery Internal Medicine Residency Program examine Adams' wounded leg.  (R. 155.)  The resident internist and faculty physician assessed that

---

[6] Adams also asserts that the ALJ erred in relying on the opinion of the disability examiner.  In his analysis, the ALJ stated, "The opinion of the DDU expert (Exhibit 7F) is even less restrictive than we find is and certainly fully consistent with the decision reached herein."  (R. 3Q.)  The record indicates that the disability examiner determined that Adams has the residual functional capacity to lift 50 pounds occasionally and 25 pounds frequently.  Adams argues that the examiner failed to consider whether it is possible for an woman weighing 86 pounds with muscle wasting and "bird legs" is able to lift 50 pounds.  The ALJ may consider Adams' argument on remand.

8

Adams suffered from cellulitis and pancytopenia.[7] (R. 153-54.) Pancytopenia is a "[d]eficiency of all the cell elements of the blood; aplastic anemia." Dorland's Illustrated Medical Dictionary (24th ed. 1965) (Saunders) at 1087. In addition, the medical records indicate that Adams has dental problems. For example, on May 12, 2007, a hospital physician noted that Adams does not wear dentures due to poor fit. (R. 164.) The court notes that, in a letter to the Appeals Council, Adams stated that she "can't get a job as a clerk because [she does not] have any teeth and nobody will hire [her]." (R. 3G.) Because the Commissioner did not consider all of Adams' impairments, the court cannot determine whether the Commissioner's determination is supported by substantial evidence.[8]

Based on the foregoing, the court concludes that the Commissioner failed to consider Adams' financial inability to secure medical treatment and failed to properly consider the effects of her chronic weight loss, pancytopenia, dental problems, and other impairments on her ability to perform work. Therefore, it is impossible for the court to determine whether the Commissioner's decision to deny benefits was rational and supported by substantial evidence. The court therefore concludes that this case is due to be remanded.

## V. Conclusion

Accordingly, this case will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.

---

[7] The medical records indicate that Adams was diagnosed with cellulitis and received treatment for her infected leg and foot in May 2007. Upon discharge, the bacterial infection was resolved.

[8] The court notes that, although the ALJ listed several of Adams' impairments, he failed to delineate which impairments he found to be severe and non-severe. Thus, the court is left to guess which impairments the ALJ considered to be severe in his analysis.

A separate order will be entered.

Done this 11th day of December, 2009.

      /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE